UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD R. GUTZEIT,                          Case No. 16-11650

          Plaintiff,                   George Caram Steeh
v.                                          United States District Judge

COMMISSIONER OF SOCIAL SECURITY,            Stephanie Dawkins Davis
                                            United States Magistrate Judge

          Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 17, 22)**

## I.   PROCEDURAL HISTORY

A.   <u>Proceedings in this Court</u>

On May 9, 2016, plaintiff filed the instant suit seeking judicial review of the Commissioner's decision disallowing social security disability benefits.  (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(A)-(C) and Local Rule 72.1(b)(3), District Judge George Caram Steeh referred this matter to the undersigned magistrate judge for the purpose of reviewing the Commissioner's decision denying plaintiff's claims.  (Dkt. 3).  On January 17, 2017, plaintiff filed a motion for summary judgment.  (Dkt. 17).  On February 17, 2017, the Commissioner filed a motion for summary judgment (Dkt. 22).  The matter is now ready for report and recommendation.

B.    Administrative Proceedings

This case is on remand from the Appeals Council.  The plaintiff appeared with counsel at a hearing held on June 26, 2014.  (Dkt. 11-2, Pg ID 87-123). Plaintiff first alleged disability since November 19, 2004; however, with the advice of his representative at the time, he amended his alleged disability onset date to July 28, 2011, the date of the application filing.  (Dkt. 11-5, Pg ID 369). Administrative Law Judge ("ALJ") Anthony R. Smereka considered plaintiff's case *de novo*.  (Dkt. 11-2, Pg ID 65-86).  In a November 4, 2014 decision, the ALJ determined that plaintiff was not disabled within the meaning of the Social Security Act.  *Id.* at Pg ID 80.  The ALJ's decision became the final decision of the Commissioner on March 16, 2016 when the Social Security Administration's Appeals Council denied plaintiff's request for review.  *Id.* at Pg ID 36-40.

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED IN PART** to the extent it seeks remand, and **DENIED IN PART** to the extent it seeks an award of benefits; that the Commissioner's motion for summary judgment be **DENIED**; and that this case be **REMANDED** for further proceedings consistent with this Report and Recommendation.

## II.    FACTUAL BACKGROUND

Plaintiff was 52 years old, which is defined as an individual closely

approaching advanced age, on the date he filed his application. He subsequently changed age categories to an individual of advanced age. Plaintiff graduated from high school and attended approximately one year of college in or around 1977. Although plaintiff has worked as an electronics repairman, his earnings records show that his wages did not reach substantial gainful activity levels, therefore for purposes of a social security analysis, plaintiff has no relevant past work experience. Plaintiff alleges that he is unable to work because of his long history with bipolar depression and due to vision problems involving diplopia[1] (double vision).

A.    ALJ Findings

The ALJ applied the five-step disability analysis to plaintiff's claims and found at step one that plaintiff has not engaged in any substantial gainful activity since July 28, 2011 the application date. (Dkt. 11-2, Pg ID 68). At step two, the ALJ found that plaintiff had the following severe impairments: diplopia, depression, bipolar disorder, and personality disorder. *Id*. At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or equals one of the listings in the regulations. *Id*. at Pg ID 69. After careful consideration of the entire record, the ALJ determined that plaintiff had the

_____

[1] Diplopia is defined as "as condition where a single object is seen in duplicate." http://www.umkelloggeye.org/conditions-treatments/diplopia-double-vision (last visited August 7, 2017).

residual functional capacity (RFC):

> to perform a full range of work at all exertional levels
> but with the following nonexertional limitations: no
> hazards including work at unprotected heights or around
> dangerous moving machinery; no climbing of ladders,
> ropes, or scaffolds; only occasional climbing of ramps
> and stairs; no more than occasional balancing; no driving
> in the course of employment; only limited reading
> involved such as can read checklist and learn by
> demonstration; unskilled work; no fast production pace
> work where the pace is set by others; and no contact with
> the public.

*Id*. at Pg ID 71.  At step four, the ALJ determined that plaintiff had no past

relevant work.  *Id*. at Pg ID 78.  At step five, the ALJ found that, given plaintiff's

age, education, work experience and RFC, there are jobs that exist in significant

numbers in the national economy that plaintiff can perform.  *Id*.  Thus, the ALJ

concluded that plaintiff has not been under a disability since July 28, 2011, the

date the application was filed.  *Id*. at Pg ID 80.

B.    Plaintiff's Claims of Error

Plaintiff raises three claims of error: (1) the ALJ erred by not articulating all

of his vision limitations as directed by the Appeals Council on remand, thus the

ALJ lacked substantial evidence for his conclusions as to his visual capabilities;

(2) the ALJ erred in discounting the opinions of plaintiff's treating psychologist

and ophthalmologist; and (3) the ALJ erred in accepting the vocational expert's

opinion regarding plaintiff's visual limitations on his ability to perform unskilled

jobs at all exertional levels.

Plaintiff first alleges that the ALJ failed to precisely evaluate and address his vision problems as directed by the Appeals Council. With respect to plaintiff's vision issues, the Appeals Council indicated that the prior ALJ did not fully articulate plaintiff's vision limitations, and on remand, further evaluation was warranted. (Dkt. 11-3, Pg ID 183). Indeed, plaintiff's RFC "must reflect, with specificity, a claimant's maximum capacity to perform basic work activities (Social Security Ruling 96-8p)." *Id.* Plaintiff avers that the ALJ erred by summarizing his own perception of plaintiff's vision problems as follows:

> In sum, [claimant's] ability to drive, ability to work as an electronics repairman through September 2012, preserved vision in the right eye, and overall minimal treatment history since his last follow up with Dr. Gladstone tends to suggest that the claimant's diplopia (and its related symptoms) are not as severe as alleged.

(Dkt. 11-2, Pg ID 73). Plaintiff specifically claims that the ALJ failed to account for the contrary evidence in the record regarding his ability to drive and when his limitations precluded him from working as an electronics repairman.

Next, plaintiff argues that the ALJ lacked substantial evidence for rejecting the opinions of his treating psychiatrist, Dr. Usha Sudindranath, and his treating ophthalmologist, Dr. Geoffrey Gladstone. The ALJ gave Dr. Sudindranath's opinion little weight stating that it was not supported by the doctor's own

treatment records showing no significant abnormalities upon mental status exam in January 2012. (Dkt. 11-2, Pg ID 77). The ALJ noted that Dr. Sudindranath's notes were highly illegible; however, the ALJ was able to make conclusions that plaintiff had normal memory and concentration. *Id.* at Pg ID 75. Plaintiff also alleges that the ALJ cherry-picked from consultative psychiatric evaluator, Dr. Imasa's opinion where he concluded that plaintiff had no limitations in carrying out simple work tasks. Plaintiff argues that Dr. Imasa never opined that plaintiff could carry out simple work tasks on a "full-time" basis. Plaintiff also says that the ALJ erred in not assigning weight to the opinion of his treating ophthalmologist, Dr. Gladstone.

Plaintiff additionally argues that the ALJ erred when he determined that substantial evidence supported the vocational expert's testimony that plaintiff could perform unskilled jobs at all exertional levels. Following the vocational expert testimony in this case, the ALJ indicated that he would leave the record open for any kind of opinion as to why the government would not "require someone to, [] get an eye patch or somehow, ... even cotton or something like that or blacken one eye to allow someone to work?" (Dkt. 11-2, Pg ID 156). Plaintiff provided a post-hearing brief addressing the VE's testimony which indicated that even with a patch, plaintiff would still have depth perception and peripheral vision problems. As such, plaintiff would be unable to perform any jobs in the national

economy on a full time basis.

     C.    <u>The Commissioner's Motion for Summary Judgment</u>

The Commissioner first argues that substantial evidence supports the visual limitations assessed by the ALJ. Plaintiff mounts two related challenges. First, he argues that the ALJ's assessment of his condition did not comply with the remand order from the Appeals Council. Second, he contends that the limitations assigned do not properly accommodate his condition. With respect to the remand order, the Commissioner argues that the ALJ's compliance with the Appeals Council's order is not a reviewable action. Specifically, with respect to step four of the administrative review process—the Appeals Council review—the applicable guidelines provide that "the administrative law judge shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. § 416.1477(b). Whether an ALJ complies with an Appeals Council order on remand is an internal agency matter which arises prior to the issuance of the agency's final decision. *See e.g.*, *Brown v. Comm'r of Soc. Sec.*, 2009 WL 465708, at *6 (W.D. Mich. Feb. 24, 2009). This court has issued numerous decisions holding that an ALJ's compliance with an Appeals Council remand order is not judicially reviewable. *See e.g., Blajei v. Comm'r of Soc. Sec.*, 2012 WL 3020026, at *8 (E.D. Mich. June 18, 2012) (refusing to consider ALJ's compliance with Appeals Council's remand

order because the court may only review "the final decision of the Commissioner, and not intermediate administrative processes") (quoting *Peterson v. Comm'r Soc. Sec.*, 2010 WL 420000, at *7 (E.D. Mich. Jan. 29, 2010)). Numerous courts have also held that where the Appeals Council denies review, as it did here, it has implicitly found that the ALJ complied with the remand order. *See e.g., Sharay v. Colvin*, 2016 WL 5539791, at *2 (E.D. Mich. Sept. 30, 2016) (stating the plaintiff "already raised [the issue of whether the ALJ complied with the Appeals Council order] before the AC, which was best suited to determine if the ALJ met the requirements of its own instruction. The AC, however, denied review. This suggests it saw no legal basis that demanded further scrutiny").

Regardless, the Commissioner contends that the ALJ did in fact comply with the Appeals Council's order and properly evaluated plaintiff's visual limitations here. Specifically, the ALJ discussed plaintiff's left eye impairment in exhaustive detail and assessed workplace limitations that fully accommodated the condition. (Dkt. 11-2, Pg ID 71-73). Those findings are supported by substantial evidence. The ALJ also discussed plaintiff's self-reported symptoms and limitations. *Id.* at Pg ID 71. Next, the ALJ examined plaintiff's testimony about his daily activities. *Id.* at Pg ID 72. The ALJ further analyzed plaintiff's course of treatment and the medical findings related to his double vision, and also plaintiff's treatment with his ophthalmologist, Dr. Geoffrey Gladstone. (Dkt. 11-2, Pg ID

72-73; Dkt. 11-8, Pg ID 807). The ALJ also assessed an April 2012 letter written by Dr. Conrad Giles of the Kresge Eye Institute. (Dkt. 11-2, Pg ID 72; Dkt. 11-8, Pg ID 788). Based on the above, the ALJ "account[ed] for [Plaintiff's] diplopia and symptoms of double vision and headaches" by limiting him to work that involves: no hazards (including work at unprotected heights or around dangerous moving machinery); no climbing of ladders, ropes, or scaffolds and only occasional climbing of ramps and stairs; no more than occasional balancing; no driving in the course of employment; and only limited reading (e.g., he can read a checklist and learn by demonstration). (Dkt. 11-2, Pg ID 73). The ALJ explained that no additional limitations were warranted because plaintiff's vision problems have not restricted him from driving despite his reports of difficulty. (Dkt. 11-2, Pg ID 73, 132-33). In addition, plaintiff was able to continue working as an electronics repairman for an additional year (through September 2012) after he last presented to Dr. Gladstone for a follow-up visit. (Dkt. 11-2, Pg ID 73, 127). The ALJ also suggested that no additional limitations were warranted because plaintiff did not have a right eye impairment. (Dkt. 11-2, Pg ID 73; Dkt. 11-7, Pg ID 603) (Dr. Gladstone noted in September 2011 that a CT scan showed a normal right orbital), Dkt. 11-2, Pg ID 138-39 (plaintiff testified that the only problems with his right eye involve a previous orbital fracture requiring surgery, and ingrown eyelashes requiring removal). The ALJ added, "[t]he claimant even testified that

he can perform activities, such as writing and driving, just fine when he tilts his head a certain way and/or closes one eye." (Dkt. 11-2, Pg ID 73, 132-33, 143-44). In sum, the ALJ conducted a complete discussion of the evidence—including plaintiff's own testimony, the medical treatment notes, and doctor's statements. The RFC finding is well supported by substantial evidence here.

Next, the Commissioner argues that the ALJ properly evaluated the evidence related to plaintiff's mental impairments, including the opinion evidence of his treating physicians. In March 2014, Dr. Sudindranath assessed plaintiff's mental limitations. (Dkt. 11-8, Pg ID 803-806). According to the ALJ, Dr. Sudindranath did not quantify the effects of plaintiff's symptoms (whether observed or reported by plaintiff) on his ability to work, but estimated that plaintiff would be absent from work two times per month due to his symptoms or treatment. (Dkt. 11-8, Pg ID 806). The ALJ gave this opinion little weight because, first, the opinion was inconsistent with Dr. Sudindranath's own treatment records, which showed no significant abnormalities. (Dkt. 11-2, Pg ID 75, 77; Dkt. 11-8, Pg ID 648-49, 651-53, 794-99); 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). The opinion was also inconsistent with a Person Centered Plan completed in April 2014, reporting that plaintiff's depression had decreased with treatment and medication. (Dkt. 11-2, Pg ID 75, 77; Dkt. 11-8, Pg

ID 800-01).  The ALJ also noted that Dr. Sudindranath's opinion was undermined

by plaintiff's extensive activities of daily living and by the recent "unremarkable"

psychological examination performed by Dr. Imasa.  (Dkt. 11-2, Pg ID 77; Dkt.

11-8, Pg ID 809-811); *see* 20 C.F.R. § 416.927(c)(4).  Dr. Imasa's opinion showed

a normal mental status examination, including attitude and behavior, mental

activity, thought content, mental capacity, memory, information, calculations,

abstract thinking, information, and judgment.[2]  (Dkt. 11-2, Pg ID 77; Dkt. 11-8, Pg

ID 810).  Consistent with Dr. Imasa's opinion, the ALJ limited plaintiff to

unskilled work that involved no fast production pace work and no contact with the

public.  (Dkt. 11-2, at Pg ID 71).

The Commissioner also argues the ALJ did not err in his weighing of Dr.

Gladstone's opinion evidence.  Dr. Gladstone's statement that plaintiff carried a

diagnosis of diplopia and noted symptoms of bilateral double vision since having

sinus surgery.  The ALJ concluded that the ophthalmology records only reflected

impairment with plaintiff's left eye.  In addition, the last time Dr. Gladstone

---

[2]  The Commissioner notes that the ALJ resolved any internal inconsistency in Dr.
Imasa's opinion explaining that he gave less weight to one isolated statement (that plaintiff "is
not able to function on a fully sustained basis") in the doctor's report.  (Dkt. 11-2, Pg ID 77).
This statement appeared only in the examination report and was inconsistent with the doctor's
formal, Medical Source Statement.  (Dkt. 11-2, Pg ID 77; Dkt. 11-8, Pg ID 810, 812).  Dr.
Imasa's Medical Source Statement, rather, opined that plaintiff could carry out simple work tasks
on a sustained basis, but he would have more than a slight limitation carrying out complex tasks
on a sustained basis.  (Dkt. 11-8, Pg ID 812).  The ALJ also explained that Dr. Imasa's statement
that plaintiff was "not able to function on a fully sustained basis" was also "inconsistent with his
essentially unremarkable mental status exam."  *Id.*

treated plaintiff was in 2011, and at that time he noted that plaintiff's prognosis was unknown. He did not perform an eye examination and was not sure whether plaintiff's double vision was intermittent or continuous. (Dkt. 11-8, Pg ID 808). Similarly, the ALJ gave full weight to Dr. Giles' opinion and accounted for Dr. Giles' opinion that plaintiff's double vision occurs while he reads or with a downward gaze in the RFC. *Id* at Pg ID 788.

The Commissioner avers that the ALJ's mental limitations are supported by substantial evidence. The ALJ discussed plaintiff's "longstanding history of mental health related treatment," which included a hospitalization in the 1990s and in 2010 for depression. (Dkt. 11-2, Pg ID 73-78; Dkt. 11-7, Pg ID 506-544, 545-593, 655-675; Dkt 11-8 Pg ID 736-787). In so doing, the ALJ also discussed plaintiff's medical improvement. *Id.* The ALJ specifically noted quarterly reviews, medication reviews, mental status findings, and intake assessments. The ALJ also evaluated treatment records from Drs. Sudindranath and Imasa. Plaintiff's reported activities were also considered. Taken together, the Commissioner argues that the ALJ's comprehensive evaluation of plaintiff's limitations is supported by substantial evidence and should be affirmed.

The Commissioner finally agues that the ALJ reasonably relied on the vocational expert's testimony. First, the Commissioner says that plaintiff's argument that the VE's testimony is misplaced because the limitations described

by the ALJ are inconsistent with O*Net has no merit.  Indeed, the Social Security

Administration does not rely on that database when making disability

determinations, instead it relies on the Dictionary of Occupational Titles ("DOT").

The Commissioner also asserts that the jobs identified by the VE do address visual

acuity for the laundry worker and bagger jobs.  And, in any case, plaintiff failed to

bring these alleged conflicts between the oral testimony and the job descriptions in

the DOT to the attention of the ALJ.  As the Sixth Circuit explained in *Martin v.

Comm'r of Soc. Sec.*, 170 Fed. Appx. 369, 374-75 (6th Cir. 2006), nothing in

applicable Social Security regulations requires the administrative law judge to

conduct his or her own investigation into the testimony of a vocational expert to

determine its accuracy, especially when the claimant fails to bring any conflict to

the attention of the administrative law judge."  The Commissioner also points out

that plaintiff's arguments regarding needing to wear an eye patch are belied by the

fact that the jobs identified by the VE could be performed *despite* plaintiff's

double vision.

## III.  DISCUSSION

### A.  Standard of Review

In enacting the social security system, Congress created a two-tiered system

in which the administrative agency handles claims, and the judiciary merely

reviews the agency determination for exceeding statutory authority or for being

arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The

administrative process itself is multifaceted in that a state agency makes an initial

determination that can be appealed first to the agency itself, then to an ALJ, and

finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is

not found during this administrative review process, the claimant may file an

action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.

1986).

This Court has original jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this

statute is limited in that the court "must affirm the Commissioner's conclusions

absent a determination that the Commissioner has failed to apply the correct legal

standard or has made findings of fact unsupported by substantial evidence in the

record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

*Walters*, 127 F.3d at 528. In deciding whether substantial evidence supports the

ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or

decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir.

2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for

the ALJ, and not the reviewing court, to evaluate the credibility of witnesses,

including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247

(6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003)

(an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard

presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545. The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky*, 167 Fed. Appx., at 508 ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted) (*see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et*

*seq*.). Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled. F. Bloch,

Federal Disability Law and Practice § 1.1 (1984). While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be

determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.

Step Two: If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three: If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C. Analysis and Conclusions

1. Appeals Council Remand Order

Plaintiff first claims that the ALJ erred by not articulating all of his vision limitations as directed by the Appeals Council on remand. Although the Sixth Circuit has yet to address this issue, numerous courts within this district have held that an ALJ's compliance with an Appeals Council remand order is not judicially reviewable. *Blajei v. Comm'r of Soc. Sec.,* 2012 WL 3020026, at *8 (E.D. Mich. June 18, 2012) (refusing to consider ALJ's compliance with Appeals Council's remand order); *Betson v. Comm'r of Soc. Sec.*, 2010 WL 1064434, at *4 (E.D.

Mich. Mar. 22, 2010) (same); *Peterson v. Comm'r of Soc. Sec.*, 2010 WL 420000,

at *7 (E.D. Mich. Jan. 29, 2010) (same); *see also, Godbey v. Colvin*, 2014 WL

4437647, at *5 (W.D. Ky. Sept. 9, 2014) (noting Sixth Circuit has not considered

issue).

> Where the Appeals Council denies request for review of
> an ALJ's decision, this Court reviews the decision of the
> ALJ rather than the findings of the Appeals Council. 20
> C.F.R. § 404.981. In addition, since the district court
> does not review internal agency-level proceedings, it will
> not address whether the ALJ complied with the specific
> provisions of the Appeals Council's order of remand.

*Peterson v. Comm'r Of Soc. Sec.*, 2010 WL 420000, at *7 (E.D. Mich. Jan. 29

2010) (citing *Riddle v. Astrue*, 2009 WL 804056, at * 19 (M.D. Tenn. Mar. 25,

2009)); *see also Dishman v. Astrue*, 2009 WL 2823653, at * 11 (E.D. Tenn. Aug.

27, 2009); *Brown v. Comm'r of Social Security,* 2009 WL 465708, at *6 (W.D.

Mich. Feb. 24, 2009) (By failing to remand the matter a second time, it appears the

Appeals Council considered the ALJ's decision to be in compliance with the

Council's previous order of remand.  Section 405(g) does not provide this court

with authority to review intermediate agency decisions that occur during the

administrative review process.).

    While there is contrary authority from other courts in this circuit, the

undersigned finds the analysis of this split in the recent case of *Shope v. Comm'r

of Soc. Sec.* compelling:

[T]here is no consensus among federal courts regarding whether an ALJ's failure to follow Appeals Council directives in a remand order may serve as independent grounds for reversal absent other error." *Godbey v. Colvin*, 2014 WL 4437647, at *5 (W.D. Ky. Sept. 9, 2014). "Differing opinions exist not only between circuits, but also among courts within the Sixth Circuit, which has not considered this particular issue." *Brown v. Comm'r of Soc. Sec.*, 2009 WL 465708 (W.D. Mich. Feb. 24, 2009); *Salvati v. Astrue*, 2010 WL 546490 (E.D. Tenn. Feb. 10, 2010)). Some courts consider an administrative law judge's failure to comply with directives of the Appeals Council to be a procedural error that can be so great as to deny the claimant fair process, *Godbey*, 2014 WL 4437647 at *6–7; *Salvati*, 2010 WL 546490 at *4–8; others assume, without deciding, that such an error may serve as an independent ground for reversal. *Keating v. Comm'r of Soc. Sec.*, 2014 WL 1238611, at *15 (N.D. Ohio Mar. 25, 2014); *Kearney v. Colvin*, 14 F.Supp.3d 943, 950 (S.D. Ohio 2014); [*see also, Gholston v. Comm'r of Soc. Sec.*, 2009 WL 440956, at *12 (E.D. Mich. Feb. 23, 2009); *Fluker v. Comm'r of Soc. Sec.*, 2013 WL 1122876, at *15 (E.D. Mich. Feb. 11, 2013)]. The overwhelming majority of courts in this circuit, however, have determined that federal courts lack jurisdiction to consider whether an administrative law judge complied with the Appeals Council's instructions on remand. *See O'day v. Comm'r of Soc. Sec.*, 2015 WL 225467, at *6 (W.D. Mich. Jan.16, 2015); *Verschueren v. Comm'r of Soc. Sec.*, 2014 WL 4925866, at *10 (W.D. Mich. Sept. 30, 2014); *Caldwell v. Colvin*, 2014 WL 3747548, at *3 (E.D. Ky. July 29, 2014); *Cooper v. Colvin*, 2014 WL 2167651, at *2 (W.D. Ky. May 23, 2014) ("Plaintiff's contention that the ALJ's decision does not comply with the Remand Order is not cognizable in this judicial review."); *Prichard v. Astrue*, 2011 WL 794997, at *15 (M.D. Tenn. Feb. 28, 2011) ("Plainly stated, this Court's scope of review 'is limited to an analysis of the ALJ's decision

and not a review of the ALJ's compliance with the
Appeals Council's Order of Remand.'"), report and
recommendation adopted, 2011 WL 1113755 (M.D.
Tenn. Mar. 25, 2011); *Peterson v. Comm'r of Soc. Sec.*,
2010 WL 420000, at *7 (E.D. Mich. Jan. 29, 2010)
("[S]ince 'the district court does not review internal
agency-level proceedings, it will not address whether the
ALJ complied with the specific provisions of the
Appeals Council's order of remand.' "); *Dishman v.
Astrue*, 2009 WL 2823653, at *11 (E.D. Tenn. Aug. 27,
2009); *Riddle v. Astrue*, 2009 WL 804056, at *19 (M.D.
Tenn. Mar. 25, 2009); *Brown,* 2009 WL 465708 at *5
("Plaintiff's appeal is inappropriate, because it seeks to
have this court review an internal agency matter....
Nevertheless, the court concludes that it lacks
jurisdiction to address plaintiff's claims."). This Court
agrees that federal courts lack jurisdiction to consider
whether an administrative law judge has complied with
the Appeals Council's instructions on remand.

*Shope v. Comm'r of Soc. Sec.*, 2015 WL 3823165, at *8 (S.D. Ohio June 19,

2015), report and recommendation adopted, 2015 WL 6155919 (S.D. Ohio Oct.

20, 2015).  The undersigned agrees with the overwhelming majority of courts in

this circuit, as well as all of the courts in this district which have specifically

discussed this issue, and concludes that federal courts lack jurisdiction to consider

whether an ALJ has complied with an Appeals Council instruction on remand.

Accordingly, plaintiff's motion should be denied as to this issue.

2.      Assessment of the Medical Opinions

Plaintiff next claims that the ALJ improperly discounted the opinions of his

treating ophthalmologist (Dr. Gladstone) and psychiatrist (Dr. Sudindranath).  The

opinion of a treating physician should be given controlling weight if it is: (1)

"well-supported by medically acceptable clinical and laboratory diagnostic

techniques," and (2) "not inconsistent with the other substantial evidence in [the]

case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004);

20 C.F.R. § 404.1527(d)(2). The Commissioner is required to provide "good

reasons" for discounting the weight given to a treating-source opinion. These

reasons must be supported by the evidence in the case record, and must be

sufficiently specific to make clear to any subsequent reviewers the weight the

adjudicator gave to the treating source's medical opinion and the reasons for that

weight. *Gayheart v. Comm'r of Soc. Sec*., 710 F.3d 365, 376 (6th Cir. 2013).

Failure to analyze a treating source opinion under the two-prong controlling

weight test amounts to the failure to provide good reasons for giving that opinion

less than controlling weight. *See id.* at 376-77.

> This requirement is not simply a formality; it is to
> safeguard the claimant's procedural rights. It is intended
> "to let claimants understand the disposition of their
> cases, particularly in situations where a claimant knows
> that his physician has deemed him disabled and therefore
> might be especially bewildered when told by an
> administrative bureaucracy that [ ] he is not.
> Significantly, the requirement safeguards a reviewing
> court's time, as it "permits meaningful" and efficient
> "review of the ALJ's application of the [treating
> physician] rule."

*Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (citations omitted). "This circuit

'has made clear that [it] do[es] not hesitate to remand when the Commissioner has not provided good reasons for the weight given to a treating physician's opinion.'" *Gayheart,* 710 F.3d at 380 (quoting *Cole*, 661 F. 3d at 939).

Even if an ALJ determines that plaintiff's treating physician's opinion should not be given controlling weight despite the medical evidence in support, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Allen v. Comm'r of Soc. Sec.*, 2013 WL 5676254, at *13 (E.D. Mich. Sept. 13, 2013) (citing *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)). "The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion." 20 C.F.R. § 404.1527(c)(3). "Moreover, when the physician is a specialist with respect to the medical condition at issue, . . . her opinion is given more weight than that of a non-specialist." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011).

      a.     <u>Geoffrey Gladstone, M.D.</u>

Plaintiff treated with Dr. Gladstone for his vision impairments from January

2009 until April 25, 2014. (Dkt. 11-8, Pg ID 707-719, 807). Regarding Dr. Gladstone's opinion on the functional limitations resulting from plaintiff's impairments, the ALJ opined:

> In April 2014, Dr. Gladstone again indicated in a statement that the claimant carries a diagnosis of diplopia. He also noted symptoms of bilateral double vision since having sinus surgery. However, despite Dr. Gladstone's statement here, the aforementioned ophthalmology records only reflect impairment with the left eye. In addition, the last time Dr. Gladstone saw the claimant was in 2011 and he even noted that the claimant's prognosis was unknown. He did not perform an eye exam and he was not sure whether the claimant's double vision was intermittent or continuous (Exhibit 23F).

(Dkt. 11-2, Pg ID 73).

Plaintiff specifically claims that the ALJ failed to assign a weight to Dr. Gladstone's opinion, did not give proper reasons for discounting his opinion, did not discuss the regulatory factors, and only selectively discusses the evidence that favors the ALJ's conclusions. *Lowery v. Comm'r of Soc. Sec.*, 55 Fed. Appx. 333, 339 (6th Cir. 2003) ("[A]n ALJ may not select and discuss only that evidence that favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning.") (citations omitted)). As to plaintiff's claim that the ALJ erred in failing to indicate what weight, if any, was given to Dr. Gladstone's opinion, the

undersigned notes that generally an ALJ must specify what weight he or she assigns to the opinion of a treating physician. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004). Indeed, if an ALJ fails to do so, "[t]his alone constitutes error, as [a] finding that a treating source medical opinion ... is not entitled to controlling weight [does] not [mean] that the opinion should be rejected." *Cole v. Astrue*, 661 F.3d 931, 938 (6th Cir. 2011) (internal quotation marks omitted). Nevertheless, courts have excused this procedural requirement associated with the treating physician rule "[s]o long as the decision permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion[.]" *Francis v. Comm'r of Soc. Sec.*, 414 Fed. Appx. 802, 805 (6th Cir. 2011) (internal quotation marks omitted). Cases in this district have held that where an ALJ offers reasons for discounting a treating physician's opinion, the procedural requirement has at least been "arguably satisfied." *See Wladysiak v. Comm'r of Soc. Sec.*, 2017 WL 3033344, *7 (E.D. Mich. June 30, 2017). Here, as in *Wladysiak*, because the ALJ provided reasons for discounting Dr. Gladstone's opinion, any error the ALJ committed in his failure to specify what weight he assigned to Dr. Gladstone's opinion is harmless.

Notwithstanding the Court's assessment of harmlessness on the issue of failing to assign a specific weight, the undersigned finds that the stated reasons for discounting Dr. Gladstone's opinion are not supported by substantial evidence.

First, the ALJ indicated that he considered plaintiff's August 2011 visit with Dr.

Gladstone. (Dkt. 11-2, Pg ID 72). During that visit, plaintiff reported ongoing

symptoms of diplopia in the left eye, worse with down gaze, as well as headaches

from the diplopia, and neck pain from having to lift his head forward to clear his

double vision. *Id.*; citing Ex. 13F. The ALJ further analyzed Dr. Gladstone's

treatment with plaintiff as follows:

> In a letter dated September 2011, Dr. Gladstone
> indicated that the claimant ended up with significant
> diplopia in down gaze immediately after his sinus
> surgery. Following another CT scan, his right orbit was
> normal while the left side had a small hole in the medial
> orbital wall. However, the medial rectus muscle appeared
> to be functioning normally with forced ductions showing
> no significant limitations. Dr. Gladstone went on to note
> that the claimant did have definite weakness in down
> gaze, which he blamed on the inferior rectus muscle;
> however, he did not suggest surgery at the time. He
> instead advised that the claimant try Fresnel prism
> glasses (*Id*. at Pgs. 8 and 12-13; and Exhibit 6F, Pg. 2).
> In October 2011, the claimant presented to Frazier
> Vision Center for what appears to be an evaluation for
> glasses (Exhibit 14F).

In April 2014, Dr. Gladstone again indicated that plaintiff carries a

diagnosis of diplopia. (Dkt. 11-2, Pg ID 73). He also noted symptoms of bilateral

double vision since having sinus surgery. *Id.* Despite this, as noted earlier, the

ALJ indicated that Dr. Gladstone's prior ophthalmology records only reflected

impairment with the left eye. *Id.* In addition, the ALJ pointed out that the last

time Dr. Gladstone saw plaintiff was in 2011, when he noted that plaintiff's prognosis was unknown. *Id.* At the April 2014 appointment, the ALJ also noted that Dr. Gladstone did not perform an eye exam and was not sure whether plaintiff's double vision was intermittent or continuous. (Dkt. 11-2, Pg ID 73; citing Exhibit 23F). Therefore, to account for plaintiff's diplopia, the ALJ made the following accommodations in the RFC:

> no working with hazards, including work at unprotected heights or around dangerous moving machinery. He cannot climb ladders, ropes, or scaffolds and can only occasionally climb ramps and stairs. He is limited to no more than occasional balancing. He cannot drive in the course of employment. In addition, he is restricted to work with only limited reading involved, such that he can read a checklist and learn by demonstration.

(Dkt. 11-2, Pg ID 73).

The undersigned points out that also in the record is a April 26, 2012 letter from Dr. Conrad Giles, a clinical professor of ophthalmology at the Kresge Eye Institute at Wayne State University School of Medicine. (Dkt. 11-8, Pg ID 788). Dr. Giles informed plaintiff that the reason for his double-vision "was as a result of your previous nasal polyp surgery where you developed a marked left hypertropia in the reading position which gave you double vision especially looking downward. While your eyes were perfectly straight ahead it is clear that in order to alleviate this symptom you will require extra ocular muscle surgery on

the left eye." *Id.* The ALJ makes no attempt to discount Dr. Giles' opinion or attempt to distinguish it as non-supportive of Dr. Gladstone's.

In discounting treating physician Dr. Gladstone's opinion regarding plaintiff's double-vision, the ALJ pointed to plaintiff's ability to drive, ability to work as an electronics repairman through September 2012, preserved vision in the right eye, and overall minimal treatment history since his last follow-up with Dr. Gladstone. (Dkt. 11-2, Pg ID 73). The undersigned finds that the ALJ's discussion falls well short of what is required under 20 C.F.R. § 404.1527(d), regarding why Dr. Gladstone's opinion should not be given controlling weight or deference. Although the ALJ's finding that plaintiff was not disabled ultimately may be justified, if an ALJ fails to adequately explain why he rejected or discounted the opinions and how those reasons affected the weight accorded the opinions, the Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

### b. Usha Sudindranath, M.D.

Psychiatrist, Usha Sudindranath, M.D., has treated plaintiff for his mental impairments since January 31, 2012. (Dkt. 11-7, Pg ID 646). On March 7, 2014, Dr. Sudindranath completed a mental impairment questionnaire concerning plaintiff's impairments. (Dkt. 11-8, Pg ID 803-806). Dr. Sudindranath noted

major depression, double vision, and a GAF score of 50.[3] (Dkt. 11-8, Pg ID 803).

She indicated that plaintiff had impairments in impulse control, mood disturbance,

difficulty thinking or concentrating, persistent disturbances of mood or affect*,

bipolar syndrome with a history of episodic periods manifested by the full

symptomatic picture of both manic and depressive syndromes (and currently

characterized by either or both syndromes)*, emotional lability, flight of ideas,

easy distractibility*, and sleep disturbance.[4] *Id.* at Pg ID 804. Plaintiff further had

a "medically documented history of a chronic affective disorder of at least two

years' duration that has caused more than a minimal limitation of ability to do any

basic work activity, with symptoms or signs currently attenuated by medication or

psycho social support, and ... Three episodes of decompensation within 12 months,

each at least two weeks long." *Id.* at 805. On average, Dr. Sudindranath

anticipated that as a result of plaintiff's limitations or treatment, he would miss

about two days of work per month. *Id.*

In assigning Dr. Sudindranath's opinion little weight, the ALJ opined:

> Dr. Sudindranath's overall opinion is given little
> [weight] because it is not supported by her own
> treatment records showing no significant abnormalities
> upon mental status exam during her psychiatric

---

[3] The undersigned notes that some of Dr. Sudindranath's notations on the mental impairment questionnaire are difficult to read. (Dkt. 11-8, Pg ID 803-806).

[4] Impairments in areas marked with a "*" Dr. Sudindranath noted "claimed," suggesting that plaintiff self-reported an impairment in this area.

evaluation in January 2012 and no further complaints of
symptoms upon medication reviews through March
2014. In addition, the claimant's depression was noted to
have decreased upon a quarterly review in April 2014.
He has been able to engage in a variety of daily
activities, all of which are detailed above, and mental
status exam findings upon recent exam [sic] Dr. Imasa
are also unremarkable. These factors do not support a
need for work absences.

(Dkt. 11-2, Pg ID 77).  On the other hand, the ALJ gave Disability Determination

Services ("DDS") consulting psychiatrist, Dr. L. Imasa's opinion "great weight"

noting that plaintiff has no more than mild to moderate limitations in work

activities related to complex work and no limitations with simple work activity.

*Id.* (citing Dkt. 11-8, Pg ID 812).  At the same time, the ALJ discounted Dr.

Imasa's conclusion that: "It is the opinion of this examiner that the claimant is not

able to function on a fully sustained basis."  (Dkt. 11-8, Pg ID 811).  The

Commissioner contends that this statement was inconsistent with Dr. Imasa's

opinion that plaintiff had no limitations carrying out simple work tasks on a

"sustained basis" but would have more than a slight limitation carrying out

complex tasks on a sustained basis.  *Id.* at 771.  Moreover, the Commissioner says

that the statement is inconsistent with plaintiff's essentially unremarkable mental

status exam.  *Id.*  Dr. Isama's conclusions, however, indicate:

Based on today's evaluation, the claimant is taking
psychotropic medication and he is able to function better
with the medication. However, he has problems with

31

> concentration and memory and admitted that sometimes
> he forgets to take his medication. When he is depressed
> he has history of suicidal thoughts and attempts requiring
> psychiatric hospitalization. He also has double vision,
> which according to documents from the Kresge Eye
> Institute he needs eye surgery to correct this. It is the
> opinion of this examiner that the claimant is not able to
> function on a fully sustained basis.

(Dkt. 11-8, Pg ID 810). Moreover, Dr. Imasa noted plaintiff's prognosis as "guarded." *Id.* at Pg ID 811. In addition, while Dr. Imasa indicated that plaintiff was able to understand and remember instructions on the Medical Source Statement, he noted that when plaintiff is "not in control [he] has difficulty focusing. Needs continue treatment." *Id.* at Pg ID 812. "In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." SSR 96-6p (S.S.A. July 2, 1996). However, for the reasons stated above, the ALJ does not present sufficient substantial evidence to justify discounting Dr. Sudindranath's opinion here. In doing so, it appears that the ALJ adopted those portions of Dr. Imasa's opinion that supported his RFC, while discounting those portions that would have supported Dr. Sudindranath's findings. For these reasons, the undersigned concludes that a remand is warranted so that the ALJ may properly weigh the opinion of Dr. Sudindranath and determine plaintiff's RFC.

Because the undersigned has determined that a remand is necessary as set forth above, it is premature to determine the remainder of plaintiff's arguments at this time.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED IN PART** to the extent it seeks remand, and **DENIED IN PART** to the extent is seeks an award of benefits; that the Commissioner's motion for summary judgment be **DENIED**; and that this case be **REMANDED** for further proceedings consistent with this Report and Recommendation.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 21, 2017   s/Stephanie Dawkins Davis
           Stephanie Dawkins Davis
           United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on August 21, 2017, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

s/Tammy Hallwood
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov